# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5236-18T1

A.J.C.,

    Plaintiff-Appellant,

v.

G.A.C.,

    Defendant-Respondent.

_____

Submitted November 4, 2020 – Decided  December 8, 2020

Before Judges Yannotti and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-1663-13.

Tina M. James, attorney for appellant.

George G. Gussis, attorney for respondent.

PER CURIAM

Plaintiff A.J.C.[1] appeals a June 21, 2019 Family Part order vacating a March 11, 2013 final restraining order (FRO) issued against defendant G.A.C. We affirm.

I.

We briefly summarize the relevant facts and procedural history. On March 2, 2013, plaintiff filed a domestic violence complaint pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, and sought a temporary restraining order based on an incident that occurred a month earlier when defendant grabbed her arm and "yanked it back forcefully" after she refused to consent to sexual intercourse. Defendant also pulled "plaintiff's hair and forcefully tried to kiss her."

On March 11, 2013, the Honorable Lisa M. Vignuolo found that plaintiff testified credibly, that defendant harassed and committed assault upon her, and that plaintiff required a FRO to protect her from "future acts of domestic violence." The judge then issued a FRO which prohibited defendant from contacting or communicating with plaintiff except in the form of emails specifically regarding issues with their children. The FRO also prevented the

---

[1] We use the parties' initials to protect A.J.C.'s privacy. R. 1:38-3(d)(10).

defendant from "making or causing" third persons to harass plaintiff and from personally "stalking, following, or threatening to harm" her.

On October 20, 2016, defendant filed a motion to vacate the FRO. Judge Christopher D. Rafano presided over a fifteen-day Carfagno[2] hearing that spanned a period of two years and which included the testimony of plaintiff and defendant. The court also heard testimony from plaintiff's five witnesses: her officemate, a family friend, a former colleague, and her aunt and uncle. The testimony included significant background information regarding the parties' interactions while the FRO was in effect. Notably, it revealed that plaintiff and defendant had engaged in an eight-month sexual relationship from March 2013 to December 2013.

During the hearing, defendant sought to admit an audio recording and its accompanying transcript of a conversation that took place between the parties after the FRO was issued. The recording also contained detailed audio of the parties engaging in sexual intercourse. Plaintiff objected to the recording on the grounds that it violated N.J.S.A. 2C:14-19(b)(1) because it contained "intimate acts" that were "sexually explicit." Judge Rafano overruled plaintiff's objection

---

[2] Carfagno v. Carfagno, 288 N.J. Super. 424 (Ch. Div. 1995).

A-5236-18T1

and concluded that the statute only applied to instances where "image[s]" of "intimate parts" are exposed.

Once admitted, the following portion of the audio transcript was read into the record:

> [Plaintiff]: It's like asking me, you know, are you afraid of me and I have a loaded gun in my hand. Of course, I'm not afraid of you. I have a loaded gun in my hand, and I'm point[ing] it at you. You're not going to be afraid. You're going to be afraid of me. I'm not going to be afraid of you.
>
> [Defendant]: Well, okay, I get your point, you know, but –
>
> . . . .
>
> [Plaintiff]: Well, it's kind of – was I afraid of you before? Yes, absolutely. And I guess that's the hard part for me to kind of unravel.
>
> [Defendant]: I want to know if you're not – that you're not afraid. Listen, I want to know that you're not afraid of me and you love me. Those are the two things which are really –
>
> [Plaintiff]: But, again, you know the true test is not whether I'm afraid of you today. Right now I have a loaded weapon . . . that I can pull and point at you at any time.
>
> [Defendant]: Okay.
>
> [Plaintiff]: So obviously I'm not afraid.
>
> [Defendant]: [A.J.C.], we don't live in a jungle.

4

[Plaintiff]: Or if somebody takes that away from me, I don't know. Maybe I will be.

[Defendant]: Okay. All right. You do what you think.

[Plaintiff]: Does that make sense?

[Defendant]: Not really because my thing is, listen –

[Plaintiff]: No, the FRO is like a gun.

[Defendant]: [A.J.C.], no, it's not a gun, [A.J.C.].

[Plaintiff]: Yes, it is.

At the February 23, 2018, May 18, 2018, and June 11, 2018 hearings, plaintiff expressed her intention to call Cynthia M. Lischick, Ph.D., LPC, DVS, as an expert witness to testify about her continued, objective fear of defendant. On February 1, 2019, Judge Rafano refused to permit Dr. Lischick to testify as defendant had not been given sufficient time to review her supplemental report that was provided to defendant on January 29, 2019, just three days before the hearing. On February 8, 2019, Dr. Lischick began, but did not finish, her direct testimony and defendant never had an opportunity to cross-examine her.

On May 14, 2019, Dr. Lischick, via a telephone conference placed on the record, stated that she was unavailable to complete her testimony until June 2019 because of an illness and several personal commitments. In response, Judge

5

Rafano offered plaintiff the opportunity to complete a de bene esse deposition of Dr. Lischick but expressly warned that if she did not complete her testimony by May 17, 2019, all "reference to her [prior] testimony" would be barred. On May 29, 2019, after plaintiff failed to complete the direct testimony of Dr. Lischick, Judge Rafano issued an order barring any reference to her testimony.

On June 21, 2019, Judge Rafano entered an order vacating the FRO and detailed his reasons in two accompanying oral decisions on June 7, 2019 and June 11, 2019. In his June 7, 2019 oral decision, Judge Rafano reaffirmed his order barring Dr. Lischick's testimony and characterized Dr. Lischick's reasons for failing to complete her testimony as "unacceptable."

The court also found the plaintiff's testimony incredible and her witnesses' testimony "to be biased, unsubstantiated, overreaching and just not believable." In contrast, the court concluded that the defendant's testimony was "credible . . . honest and sincere." Further, in his June 11, 2019 oral decision, Judge Rafano reviewed the relevant factors for dissolving a FRO identified in Carfagno and concluded that defendant had established good cause to dissolve the FRO.

On appeal, plaintiff first argues that Judge Rafano erred because defendant failed to show good cause to dissolve the FRO. She also maintains that the judge: 1) misapplied the Carfagno factors; 2) made adverse credibility findings

that were not based on substantial credible evidence in the record; 3) abused his discretion by excluding Dr. Lischick's expert testimony; and 4) improperly admitted evidence of the intimate recording between the parties.

II.

We reject plaintiff's first and second arguments that the court committed error in vacating the FRO because defendant failed to show good cause and that the trial court erred in its application of the Carfagno factors. We also deem meritless defendant's third claim that the trial court's credibility findings were not supported by the record.

A trial court's findings of fact are binding on appeal if "supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1988) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). An appellate court may not set aside a trial court's factual findings unless convinced the findings "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

We also review a trial court's evidentiary rulings for an abuse of discretion. State v. McGuire, 419 N.J. Super. 88, 123 (App. Div. 2011). A trial court's evidentiary rulings should not be disturbed on appeal absent a showing

of a clear abuse of discretion, in other words, a clear error in judgment. State v.

J.A.C., 210 N.J. 281, 295 (2012). In applying this standard, an appellate court

should not substitute its own judgment for that of the trial court, unless "the trial

court's ruling is so wide of the mark that a manifest denial of justice resulted."

Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

"[T]he Legislature did not intend that every final restraining order issued

pursuant to the [PDVA] be forever etched in judicial stone." A.B. v. L.M., 289

N.J. Super. 125, 128 (App. Div. 1996). A defendant may move to dissolve or

modify an FRO upon a showing of "good cause." N.J.S.A. 2C:25-29(d).

"With protection of the victim the primary objective, the court must

carefully scrutinize the record and carefully consider the totality of the

circumstances before removing the protective shield." Kanaszka v. Kunen, 313

N.J. Super. 600, 605 (App. Div. 1998). In Kanaszka, we adopted Carfagno's

non-exclusive list of eleven factors that trial courts consider when determining

whether good cause has been shown. Id. at 607. Those factors, which are to be

weighed "qualitatively, and not quantitatively," Carfagno, 288 N.J. Super. at

442, include:

> 1) whether the victim consented to lift the restraining
> order; 2) whether the victim fears the defendant; 3) the
> nature of the relationship between the parties today; 4)
> the number of times that the defendant has been

convicted of contempt for violating the order; 5) whether the defendant has a continuing involvement with drug or alcohol abuse; 6) whether the defendant has been involved in other violent acts with other persons; 7) whether the defendant has engaged in counseling; 8) the age and health of the defendant; 9) whether the victim is acting in good faith when opposing the defendant's request; 10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and 11) other factors deemed relevant by the court.

[Id. at 435.]

The PDVA is designed to assure victims of domestic violence "the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. "The Legislature intended to protect the victims—not to punish the person who committed the act of domestic violence." Carfagno, 288 N.J. Super. at 434. The PDVA "should not be distorted or trivialized by misuse." N.B. v. T.B., 297 N.J. Super. 35, 42 (App. Div. 1997).

Here, the court appropriately considered the Carfagno factors and determined that the defendant had shown good cause to dissolve the FRO. The court's decision was based substantially upon its conclusion that: 1) plaintiff did not objectively fear the defendant; and 2) plaintiff did not act in good faith when opposing defendant's request to vacate the FRO.

9

Regarding factor two, plaintiff's lack of objective fear, the court found that "there are several issues that point to [her] failure to sustain this factor." Specifically, the court referenced plaintiff's "repeated liaisons with [defendant]" and her comments that she had "sex with [defendant] because 'she trusts him.'" The court further noted that plaintiff referred to the FRO as a "loaded gun" and that she "repeatedly refuse[d]" to enforce the FRO against him.

The court also relied on these facts in its determination that the plaintiff did not act in good faith under factor nine. Indeed, the court reiterated that "[i]nstead of violating [defendant] for . . . alleged violations [of the FRO], [plaintiff] [did] nothing. She carrie[d] on an eight-month relationship, even showing up at [defendant's] door only dressed in a raincoat. And now she takes the position that she needs the [FRO]." The court also equated the plaintiff's reference to the FRO as a "loaded gun" to "what is commonly referred to as using [the FRO] as a sword and not a shield."

Judge Rafano also found that factors four, five, six, eight, and ten were inapplicable. Regarding factor eleven, the judge noted that the plaintiff's reference to the FRO as a "loaded gun" weighed in favor of the FRO's dissolution.

Judge Rafano also made adverse credibility findings as to each of the plaintiff's witnesses who testified during the <u>Carfagno</u> hearing. Applying our deferential standard of review, we are satisfied that Judge Rafano's credibility findings and his application of the <u>Carfagno</u> factors are supported by adequate, substantial, credible evidence in the record.[3] <u>Cesare</u>, 154 N.J. 394 at 412.

### III.

In plaintiff's fourth point, she contends that the "trial court abused its discretion when it excluded expert testimony during the <u>Carfagno</u> hearing." Specifically, she maintains that it is an "abuse of discretion for a trial court to close the courthouse doors to a litigant's expert because the trial court could not effectively manage its docket." We disagree.

We first note that plaintiff's argument misconstrues the record. The trial court did not "close the courthouse door" to Dr. Lischick. Rather, Judge Rafano barred her testimony because plaintiff failed to ensure that her testimony was completed by a court ordered date. As noted, on February 8, 2019, plaintiff began, but did not finish, Dr. Lischick's direct examination. At the end of that

---

[3] We observe that although Judge Rafano did not specifically address factors one and three, the court's findings as to the remaining factors, when weighed "quantitatively," establish that the judge's determination to vacate the FRO was amply supported by the record. <u>Carfagno</u>, 288 N.J. Super. at 442.

day's testimony, the parties and the court discussed scheduling the next date for the hearing.  Dr. Lischick stated that she would return from vacation "the second in week in March."

The record is unclear as to why the next hearing date was scheduled on May 13, 2019 instead of March 2019.  However, at the May 13, 2019 hearing, in response to Dr. Lischick's failure to appear, Judge Rafano noted that "[May 13, 2019] had been set aside a while ago."  The judge also stated that he had "[his] secretary call to let everybody know that [he had] . . . put aside" May 14, 2019 and May 15, 2019, to conclude the trial.  Judge Rafano further indicated that May 16, 2019 was available if necessary.  The plaintiff then noted that she would tell Dr. Lischick that it was necessary for her to testify the next day.  On May 14, 2019, however, Dr. Lischick did not appear to complete her testimony. In response, Judge Rafano stated that he would also make May 17, 2019 available to "conclude [the] case."  Despite this additional accommodation, Dr Lischick maintained that she would be unable to testify until June 2019.

We conclude that Judge Rafano appropriately exercised his discretion to exclude Dr. Lischick's testimony.  McGuire, 419 N.J. Super. at 123.  The judge provided plaintiff with four additional trial dates and the option to conduct a de bene esse deposition to conclude her direct testimony.  The plaintiff was also

aware that Judge Rafano would bar the testimony of Dr. Lischick if she failed to complete it by May 17, 2019.

We also conclude that Judge Rafano's decision to bar Dr. Lischick's testimony on plaintiff's continued objective fear was not harmful error in any event. Under the harmful error standard, an error will not lead to reversal unless it is clearly capable of producing an unjust result. State v. Macon, 57 N.J. 325, 337-38 (1971). An error will be found harmless unless there is a reasonable doubt that the error contributed to the verdict. Id. at 338.

Here, Judge Rafano did not bar the admission of all evidence related to plaintiff's objective fear of the defendant. Indeed, the judge appropriately considered plaintiff's argument, and during the Carfagno hearing evaluated the testimony of five witnesses who testified in support of plaintiff's objective fear but concluded that those witnesses were not credible. Under these circumstances, the decision to bar Dr. Lischick's testimony clearly did not lead to an unjust result.

IV.

In her last point, plaintiff asserts that the trial court abused its discretion when it admitted the audio recording and its accompanying transcript at the Carfagno hearing. Specifically, plaintiff maintains that its admission violates

N.J.S.A. 2C:14-9(b)(1) because the recording contains "sexual contact between the parties." In addition, plaintiff contends for the first time on appeal that the evidence was inadmissible pursuant to N.J.R.E. 403. We disagree.

N.J.S.A. 2C:14-9(b)(1) states that:

> An actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so, he photographs, films, videotapes, records, or <u>otherwise reproduces in any manner, the image of another person</u> whose intimate parts are exposed or who is engaged in an act of sexual penetration or sexual contact, without that person's consent and under circumstances in which a reasonable person would not expect to be observed.
>
> [N.J.S.A. 2C:14-9(b)(1) (emphasis added).]

Intimate parts "means the following body parts: sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." N.J.S.A. 2C:14-1; see also State v. Nicholson, 451 N.J. Super. 534, 539 (2017) (holding that defendant violated N.J.S.A. 2C:14-9(b) when he photographed "victim's inner thighs and buttocks" that were visible through "her sheer pantyhose"). As the trial court properly noted, N.J.S.A. 2C:14-9(b)(1) only applies when images of intimate parts are exposed and reproduced. The court therefore did not err in admitting the audio recording and its accompanying transcript as no image of the above referenced intimate parts were reproduced in any manner.

We further conclude that N.J.S.A. 2C:14-9(b)(1) did not preclude the court from considering the recording under the circumstances presented. Indeed, the recording was made by defendant, a participant in the recording, and addressed relevant evidence. See N.J.R.E. 401, 402. Specifically, the explicit sexual encounter memorialized in the recording directly contradicted plaintiff's assertion that she objectively feared the defendant.

We also reject plaintiff's argument raised for the first time on appeal that the audio recording and its accompanying transcript were inadmissible pursuant to N.J.R.E. 403. Relevant evidence is presumptively admissible under N.J.R.E. 402, but may be found inadmissible under N.J.R.E. 403, "if its probative value is substantially outweighed by the risk of . . . undue prejudice." See also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 5 on N.J.R.E. 403 (2020) ("Only 'undue' prejudice can justify the exclusion of otherwise admissible evidence. This qualifier is critical to proper application of N.J.R.E. 403 because all damaging evidence is prejudicial."); Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001) ("The mere fact that 'evidence is shrouded with unsavory implications is no reason for exclusion when it is a significant part of the proof.'") (quoting State v. West, 29 N.J. 327, 335 (1959)).

We typically decline "questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Here, plaintiff failed to raise a N.J.R.E. 403 objection to the audiotape during the Carfagno hearing.

Although we could decline to consider plaintiff's argument, for purposes of completeness we have considered it and reject it on the merits. As noted, N.J.R.E. 403 does not prohibit the admission of harmful evidence but only that which is unduly prejudicial. The recording fully supports defendant's claim that plaintiff did not fear defendant and that a FRO was no longer warranted. Plaintiff did not suffer undue prejudice from its introduction.

To the extent we have not addressed any of plaintiff's remaining arguments it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-5236-18T1