# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2513-24

R.M.,

     Plaintiff-Respondent,

v.

G.S.,[1]

     Defendant-Appellant.

_____

Argued May 4, 2026 – Decided May 21, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0010-93.

Jeffrey A. Skiendziul argued the cause for appellant (The Tormey Law Firm LLC, attorneys; Travis J. Tormey, of counsel; Jeffrey A. Skiendziul, on the brief).

---

[1] We refer to the parties using their initials to protect their privacy and ensure the confidentiality of these proceedings. R. 1:38-3(d)(9).

Jerry Eisdorfer argued the cause for respondent (Eisdorfer Eisdorfer & Eisdorfer, LLC, attorneys; Jeff Thakker, of counsel; Jerry Eisdorfer, on the brief).

PER CURIAM

Defendant G.S. appeals from a March 5, 2025 Family Part order denying his motion to vacate a final restraining order ("FRO") entered against him in 1992, pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35. Defendant primarily argues that the court erred in failing to consider the change in circumstances and the factors set forth in Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995). We affirm.

I.

The following facts are substantially undisputed. Plaintiff and defendant were romantically involved from approximately 1990 to 1992, when plaintiff obtained a FRO against defendant, which was entered by a Middlesex County judge on July 9, 1992.

Because the facts underlying the entry of the 1992 FRO are germane to this appeal, we provide a brief recitation here. Plaintiff relocated to Vermont in August 1991 to attend college, leaving defendant, who resided with her family in New Jersey. Defendant was serving in the United States military at the time. According to plaintiff, defendant's harassing conduct escalated after she went to

A-2513-24

college, at which point, he began engaging in harassing phone calls and becoming increasingly controlling, physically abusive, and obsessively jealous. When she objected, defendant would become angry, yell at her, and grab her arm, and his conduct only increased after she ended the relationship during the 1991 Christmas holiday. Defendant also appeared intoxicated at her dormitory, threw rocks at the windows, banged on her dorm room door, and followed her around campus for several days. Defendant sent her letters stating that he would "never give up," would make it "his mission in life" to get her back, and would "come at [her with] full force" because he had "nothing to lose."

Defendant also attempted to enroll as a student at the same college plaintiff attended and even attempted to move into the same dorm where plaintiff lived. Defendant's efforts were thwarted when plaintiff obtained a restraining order in Vermont, which prompted the college to rescind defendant's acceptance. Eventually, plaintiff transferred to another college out of fear that defendant would attempt to locate her.

Plaintiff later married R.T. and adopted her husband's last name. After moving around for several years due to her husband's career, plaintiff, her husband, and her children relocated to Florida.

In 2013, after the death of plaintiff's father, defendant mailed plaintiff a package containing a handwritten note referencing the passing of plaintiff's father and compact discs ("CDs") containing music.[2] At no time did plaintiff respond to defendant's unsolicited package. In 2022, defendant moved to Florida, approximately forty-five miles from plaintiff's residence.

On December 20, 2023, defendant moved to vacate the 1992 FRO, asserting that he was never served with the FRO, was never charged with a crime, and that the persisting FRO interfered with his access to military installations and international travel. Plaintiff opposed the motion, arguing she continued to harbor a reasonable fear of defendant based on his prior conduct, as well as the unsolicited 2013 package and its contents.

During the ensuing motion hearing, defendant first denied having ever received the 1992 FRO; however, on cross-examination, he admitted to signing the certified-mail receipt for the FRO. Defendant further admitted to mailing plaintiff the package following her father's death in 2013. Defendant testified the compact discs contained "freestyle" music intended to console plaintiff, although the music included numerous romantic songs. When questioned on

---

[2] On a sticky note attached to the package, defendant wrote, "Thought you might enjoy these. Sorry to hear about your dad."

A-2513-24

cross-examination regarding his prior criminal history, defendant acknowledged that he had been charged in the State of Virginia with impersonating a police officer and that his former spouse had obtained a TRO against him in the State of Texas in either 2007 or 2008, information he had not disclosed in his motion certification.

The court also heard testimony from plaintiff, her mother, and sister, each of whom testified to defendant's prior manipulative and fright-inducing tactics against plaintiff. Plaintiff made clear her opposition to vacating the FRO, reiterating her concerns for her safety and the safety of her family. She further testified that when she learned defendant had moved to Florida, it heightened her fear and prompted her to install a home alarm system and obtain a large dog for protection.

Following the presentation of the evidence, the court issued a written order, accompanied by a detailed statement of reasons, denying defendant's motion without prejudice. The court first addressed its credibility findings and conclusion that plaintiff "appeared quiet, respectful, confident" and emotional, and "answered questions in a clear and prepared manner that demonstrated to the [c]ourt her respect and candor." By contrast, the court found defendant's credibility "faltered" during cross-examination after he admitted he had in fact

5

signed the certified-mail receipt for the 1992 FRO, mailed plaintiff an unsolicited package in 2013 while the FRO was in effect, and had a prior criminal charge.

The court next summarized the relevant testimony presented by the parties' witnesses and the applicable law, addressing the substantive issue of whether the FRO should be vacated and weighing the factors set forth in Carfagno, 288 N.J. Super. at 435. After discussing the factors, the court rejected defendant's argument the FRO significantly hindered his daily life as a basis for vacatur, noting that it would not "dismiss the FRO based on . . . [d]efendant's minor inconveniences." The court further noted several of defendant's contradictory statements, including his repeated testimony that he had no contact with plaintiff, only to admit that he in fact mailed her three CDs with 69 songs to allegedly "console her," his denial that he was in fact served with the 1992 FRO, and his testimony that there were no other FROs against him.

The court agreed with plaintiff that defendant's actions were indeed "creepy," referring to his specific action of culling together 69 songs and burning them into CDs to mail to plaintiff after twenty years, which necessitated that he search for plaintiff—under her new married name—and address. Based on this evidence, the court concluded defendant's actions were not made in good faith

6

towards plaintiff, and were similar to a "fishing expedition," in which "[d]efendant was testing the metaphorical waters to see if the [p]laintiff would bite back and contact him after receiving the package," but instead, defendant's contact had the opposite effect of causing "[p]laintiff heightened fear and anxiety." The court denied defendant's motion without prejudice. Defendant appealed.

## II.

Our review of a motion to dissolve an FRO is limited. See G.M. v. C.V., 453 N.J. Super. 1, 11-12 (App. Div. 2018). We review the denial of such a motion for an abuse of discretion. Id. at 11. We give "substantial deference" to the trial court's factual findings and legal conclusions in a domestic violence matter, C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020), due to the Family Part's "'special jurisdiction and expertise in family matters,'" G.M., 453 N.J. Super. at 11 (quoting N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010)).

Moreover, we are bound by the trial court's findings if they are "'supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled

to any special deference'" and are reviewed de novo. <u>Hitesman v. Bridgeway, Inc.</u>, 218 N.J. 8, 26 (2014) (quoting <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

"[T]he court must carefully scrutinize the record and carefully consider the totality of the circumstances before removing the protective shield [of the FRO]." <u>Kanaszka v. Kunen</u>, 313 N.J. Super. 600, 605 (App. Div. 1998). Mindful that the purpose of the PDVA is "to protect the victims—not to punish the person who committed the act of domestic violence[,]" an FRO may be vacated "where there is . . . 'a change of circumstances [whereby] the continued enforcement of the injunctive process would be inequitable, oppressive, or unjust, or in contravention of the policy of the law.'" <u>Carfagno</u>, 288 N.J. Super. at 434-35. An FRO may be dissolved only "upon good cause shown." N.J.S.A. 2C:25-29(d).

"The party asking to modify or dissolve the FRO has the 'burden to make a prima facie showing [that] good cause exists for dissolution of the restraining order prior to the judge fully considering the application for dismissal.'" <u>G.M. v. C.V.</u>, 453 N.J. Super. 1, 12-13 (App. Div. 2018) (alteration in original) (quoting <u>Kanaszka</u>, 313 N.J. Super. at 608).

In determining whether a movant has shown good cause, a court must consider the following factors in accordance with the standard established in Carfagno:

> (1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.
>
> [G.M., 453 N.J. Super. at 13 (quoting Carfagno, 288 N.J. Super. at 434-35).]

Courts must weigh the Carfagno factors qualitatively, not quantitively, Carfagno, 288 N.J. Super. at 442, and "carefully scrutinize the record and carefully consider the totality of the circumstances" before dissolving a FRO, G.M., 453 N.J. Super. at 14 (quoting Kanaszka, 313 N.J. Super. at 605). To obtain a plenary hearing on a motion to dissolve a FRO, the movant must make a prima facie showing that good cause exists for the requested dissolution and

9

that there "are 'facts in dispute material to a resolution of the motion.'" Id. at 13 (quoting Kanaszka, 313 N.J. Super. at 608).

"The linchpin in any motion addressed to dismissal of a [FRO] should be whether there have been substantial changed circumstances since its entry that constitute good cause for consideration of dismissal." Kanaszka, 313 N.J. Super. at 609. Even where some changed circumstances are shown, however, dismissal is not automatic because the statute provides that an FRO "may" be dissolved upon good cause shown, not that it must be dissolved. Stevenson v. Stevenson, 314 N.J. Super. 350, 362 (Ch. Div. 1998).

Before us, defendant argues the court erred in denying his motion to vacate the 1992 FRO and in finding he failed to demonstrate substantial changed circumstances warranting dissolution of the FRO. Defendant primarily relies on the passage of time, the absence of any contempt convictions, the absence of a current relationship between the parties, and the alleged impact the FRO has had on his access to military bases and international travel. Guided by the well-settled legal principles enunciated above and our limited standard of review, we reject defendant's wholly unpersuasive arguments and affirm the court's well-reasoned decision. Despite the passage of more than thirty-years since the entry of the FRO and twenty years following defendant's

10

last contact with plaintiff in violation of the FRO, we are satisfied that the court did not err in denying defendant's application for vacatur. As the court amply noted, plaintiff remains in fear of defendant due to his actions both pre- and post-entry of the 1992 FRO. The court found plaintiff's testimony more credible than defendant's and properly concluded that defendant's testimony was replete with contradictions concerning this victim, the 1992 FRO, his subsequent criminal history, and the entry of at least one other FRO against him. Against this backdrop, we conclude the court articulated a sufficient and adequate basis to deny defendant's motion.

We likewise conclude defendant's argument that the court misapplied the Carfagno factors is equally unavailing. Thus, we discern no basis to support defendant's contention the court abused its discretion by denying his motion and, accordingly, affirm the court's order.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack any merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

11

A-2513-24